**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA ) | ) | |
| v. | ) | No. 05-CR-10135-NMG |
| MICHAEL VACCARO | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS IDENTIFICATION EVIDENCE**

Michael Vaccaro ("the defendant") submits this memorandum of law in support of his motion to suppress the identification procedure utilized in this case. Specifically, the defendant contends that the government violated his rights under the Fifth Amendment to the United States Constitution when it employed a suggestive photo array procedure lacking in safeguards sufficient to ensure that the witnesses did not confer with each other before selecting the defendant from the array. The improper photo array identification procedure infringed upon the defendant's clearly established Due Process rights. The court can remedy this violation only by ordering the suppression of the illegally obtained identification.

**FACTS AND BACKGROUND**

Following an investigation by the government, a federal grand jury returned an indictment charging the defendant with a violation of the federal arson statute. See 18 U.S.C. § 844. The indictment alleges that the defendant employed an incendiary device to burn a dwelling located at 47 Chapel Street in Lowell, Massachusetts. The government theorizes that

the defendant, a successful businessman with no criminal record or past history of violence, set fire to the building after a prostitute who resided there cheated him out of sixty ($60.00) dollars.

As part of its investigation, an agent of the United States Bureau of Alcohol, Tobacco, and Firearms ("ATF") and an officer from the Lowell Police Department met with four witnesses who claimed they saw a person matching the defendant's description within the 47 Chapel Street building about a half an hour prior to the arson. The witnesses included Mark Mascaro, Thomas Mascaro, Anthony DeFreitas, and Anissa Willette. Mark Mascaro, Thomas Mascaro, and Anissa Willette reside at 47 Chapel Street, and Anthony DeFreitas owns the property. Thomas Mascaro is Mark Mascaro's father. Anissa Willette is Mark Mascaro's girlfriend. Thomas Mascaro, Mark Mascaro, and Anissa Willette, the three residents of 47 Chapel Street, all suffer from a heroin addiction problem.[1]

The government agents met with each of the witnesses at the 47 Chapel Street property. The government agents met with Mark Mascaro, Anissa Willette and Anthony DeFreitas on October 14, 2004. The government agents met with Thomas Mascaro on October 22, 2004. The agents asked the witnesses to view a photo array, which contained the defendant's picture. The government presented the exact same array to each of the four witnesses. In presenting the array to the witnesses, the government took no precautions to ensure that the witnesses did not discuss the identification with one another.

## **ARGUMENT**

The government's identification procedure violated the defendant's constitutional rights. It is well-established that an identification based upon an overly suggestive or invalid photo array

---

[1] Mark Mascaro, Thomas Mascaro, and Anissa Willette later admitted under oath that they each had shot up several bags of heroin on the day that they testified before the Grand Jury in this matter.

deprives a defendant of his right to due process in accordance with the Fifth Amendment to the United States Constitution. United States v. Lopez-Lopez, 282 F.3d 1, 10 (1st Cir. 2002). The First Circuit has held that when a defendant challenges the suggestiveness of a photo array, district courts must employ a two-pronged analysis. United States v. Henderson, 320 F.3d 92, 100 (1st Cir. 2003). The first step requires the reviewing court to determine if the array was unduly suggestive. Id. If the court finds the array unduly suggestive, then it next must address whether "the identification itself was reliable under the totality of the circumstances, notwithstanding the suggestive procedure." Lopez-Lopez, 282 F.3d at 10-11.

Reliability involves an assessment of five factors as enumerated in the Supreme Court's landmark case of Neil v. Biggers, 409 U.S. 188, 199-200 (1972). The five Biggers factors include "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the defendant; (4) the level of certainty demonstrated by the witness at the confrontation; (5) the length of time between the crime and the confrontation." Biggers, 409 U.S. at 199-200. Reliability is the lynchpin in determining whether to admit the challenged identification evidence. Henderson, 320 F.3d at 100.

Here, the procedures utilized by the government agents were impermissibly suggestive and untrustworthy rendering the identifications unreliable. Suggestiveness exists because the agents showed the exact same photo array to four witnesses without taking any measures to ensure that the witnesses did not discuss the identification with each other. It is well-established that the government must take sufficient precautions to avoid the possibility that the people viewing the array could confer with each other prior to the actual identification. See United States v. Larkin, 978 F.2d 964, 970 (7th Cir. 1992) ("Precautions taken by authorities ensured

that these four witnesses did not influence any of the other seven witnesses at the lineup"); United States v. Fowler, No. CR. 4-9-B-W, 2005 WL 757786, at *2 (D. Maine March 3, 2005) ("The fact that both Mr. and Mrs. Clough viewed the photo arrays independently without opportunity to confer or witness each other's selection demonstrates good police procedures, not suggestive ones") (internal quotations omitted).

In this case, the police showed the exact same array to four witnesses without taking any precautions to ensure independent observation. Moreover, in this case, three of the witnesses live together and had ample opportunity to confer with each other about the array. In fact, Thomas Mascaro did not view the array until one week after his son and his son's girlfriend identified the defendant's picture. Without proper safeguards, the witnesses who looked at the same array easily could have discussed the fact that the defendant's photograph was located in the third position in the bottom row of the array. Unlike Larkin and Fowler, the absence of a proper safeguard taints the identification process and renders it unduly suggestive and unreliable.

Here, the Biggers factors do not cure the taint of the suggestive identification. In this case, three of the witnesses viewed the array two weeks after the supposed arson and one witness examined the array three weeks after the fire. Mark Mascaro and Anthony DeFreitas admitted that they were only 70 to 85 percent sure that the defendant was the person they had observed near the property before the explosion. Mark Mascaro and Anthony DeFreitas also looked at the array after Anissa Willette identified the defendant. Without proper safeguards, the government cannot disprove the very likely possibility that Willette shared her identification and observations with Mark Mascaro and Anthony DeFreitas. Although Thomas Mascaro did not express any tentativeness regarding the photo array identification, he viewed the same array more than a week after the three other witnesses viewed the array increasing the likelihood that one of the

two witnesses who lived with him discussed the defendant's photo location in the array. Moreover, the witnesses' level of attention here is highly suspect. Three of the four witnesses – Thomas Mascaro, Mark Mascaro, and Anissa Willette – admitted that they have a heroin addiction problem and consume copious quantities of the illegal drug each day. The admitted heroin use raises serious questions about the witnesses' ability to perceive and remember. Combined with the lack of safeguards preventing collusion, the heroin use and the lack of certainty regarding some of the witnesses' recollections render the photo array identification procedure unreliable. As reliability is the lynchpin of the photo array identification process, the court cannot allow its admission. Principles of due process and fundamental fairness, therefore, compel exclusion of the results of the tainted and untrustworthy identification procedure.

## CONCLUSION

For the foregoing reasons, the court must order the suppression of the unreliable identification evidence.

Dated: April 10 2006

Respectfully submitted,
MICHAEL VACCARO
By his attorneys,

/s/ Gary G. Pelletier
_____
R. Bradford Bailey, BBO#549749
Gary G. Pelletier, BBO#631732
DENNER ASSOCIATES, P.C.
Four Longfellow Place, 35th Floor
Boston, MA  02114
(617) 227-2800