UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA ) | ) | |
| v. | ) | No. 05-CR-10135-NMG |
| MICHAEL VACCARO | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS INDICTMENT**

Michael Vaccaro ("the defendant") submits this memorandum of law in support of his motion to suppress the indictment in this case. The defendant contends that the government violated his rights under the Fifth Amendment to the United States Constitution when it secured an indictment based upon the testimony of incompetent witnesses. Specifically, the government obtained an indictment against the defendant based almost entirely upon the testimony of three supposed witnesses who each admitted under oath that they had consumed several bags of heroin prior to their testimony. The use of these witnesses constitutes a structural error so prejudicial that it deprived the defendant of his fundamental rights. The court can remedy this deprivation only by ordering the dismissal of the improperly obtained indictment.

**FACTS AND BACKGROUND**

On October 1, 2004, an explosion occurred in a residence on 47 Chapel Street in Lowell, Massachusetts. State and federal investigators determined that the explosion resulted from arson. The investigators suspected that the defendant was the arsonist. The government theorized that

the defendant visited 47 Chapel Street to utilize the services of prostitute named Anissa Willette ("Willette"). The government alleges that when Willette deprived the defendant of sixty ($60.00) dollars worth of her services, he retaliated by burning her home. The defendant, a prominent local businessman with no criminal convictions, vehemently denies the allegation.

Convening a grand jury, the government subpoenaed Willette and three other individuals who claim they saw a person matching the defendant's description within the 47 Chapel Street building about a half an hour prior to the arson. In addition to Willette, the witnesses included Mark Mascaro, Thomas Mascaro, and Anthony DeFreitas. Mark Mascaro, Thomas Mascaro, and Anissa Willette reside at 47 Chapel Street, and Anthony DeFreitas owns the property. Thomas Mascaro is Mark Mascaro's father. Anissa Willette is Mark Mascaro's girlfriend. Thomas Mascaro, Mark Mascaro, and Anissa Willette, the three residents of 47 Chapel Street, all suffer from a heroin addiction problem.

A few hours prior to testifying before the grand jury, Willette, Mark Mascara, and Thomas Mascara each consumed several bags of heroin. The three witnesses admitted their heroin use to the government, and the government disclosed their illegal use of the drug to the grand jury. During its grand jury examination of Willette, the government asked the following questions and elicited responses as follows:

    Q:    Did you use heroin this morning?

    A:    Yes.

    Q:    What time?

    A:    Quarter of 9:00

Willette Grand Jury Transcript at 6-7.

The government also asked Willette whether she was high, had the ability to listen to questions, and understood everything asked. Willette replied that she was not high and understood all of the government's questions. Id. When the government question Mark Mascaro, he also admitted that he had used heroin. The following colloquy ensued:

> Q: How did you ingest the heroin that you used?
>
> A: Snorted it.
>
> Q: How many bags did you snort?
>
> A: Three.
>
> Q: Do you remember telling me two bags?
>
> A: Two. Yeah. I just remember three though.
>
> Q: Okay. But, you acknowledge that, before you came in, you told me you used two?
>
> A: I know.

Mark Mascaro Grand Jury Transcript at 6.

Upon further questioning, Mark Mascaro told the government that the heroin had no effect on his mental or cognitive abilities. Id. at 11. One day later, Mark's father, Thomas Mascaro, also testified before the grand jury in this case and, like his son and son's girlfriend, also admitted that he had ingested heroin in the hours preceding his testimony before the grand jury. In a similar manner, a colloquy ensued as follows:

> Q: Did you use heroin today?
>
> A: Yes.
>
> Q: When did you use heroin today?
>
> A: 9 o'clock this morning.

> Q: How much heroin did you use?
>
> A: Two bags.
>
> Q: How did you ingest it?
>
> A: Injection.
>
> Q: Since using two bags at 9 a.m., have you used any more heroin?
>
> A: No.
>
> Q: Are you under the influence of any other substance as you testify today?
>
> A: No.
>
> Q: Now, I used the language under the influence. Do you feel, as you testify right now, the effects of the ingestion of heroin?
>
> A: No, I feel good.
>
> Q: Okay. Do you feel clear headed?
>
> A: Yes, I do.
>
> Q: Are you sure?
>
> A: I'm positive.
>
> Q: Do you understand everything that's going on around you?
>
> A: I understand everything. Yes, I do.

Thomas Mascaro Grand Jury Testimony at 5-6.

From the transcription record, it appears that each of the witnesses testified before the grand jury in the early to mid-afternoon on the day they ingested the heroin. Again, each of the witnesses claimed they ingested the illegal drug at approximately 9:00 a.m. on the same day they testified before the grand jury. Later, the grand jury returned an indictment charging the defendant with a violation of the federal arson statute. See 18 U.S.C. § 844.

## ARGUMENT

The Fifth Amendment to the United States Constitution provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. CONST. AMEND. V. The return of a facially valid indictment by a grand jury duly constituted in accordance with federal law generally satisfies the requirements of the Fifth Amendment. Costello v. United States, 350 U.S. 359, 363 (1956). "Provided the grand jury is unbiased and the indictment valid on its face, the indictment is not subject to challenge on the ground that the jury acted upon the basis of inadequate or incomplete evidence." United States v. McClay, No. CR. 4-15-B-W, 2005 WL 757613, at *2 (D. Maine March 28, 2005) (quoting United States v. Calandra, 414 U.S. 338, 363 (1974) (internal quotations omitted)).

The United States Supreme Court has established an exception to its rule forbidding evidentiary challenges to a grand jury decision in "rare circumstances" where unconstitutional error infects and prejudices the structural integrity of the indictment process. McClay, 2005 WL 757613, at *2. Specifically, a district court has the authority to dismiss an indictment in "those cases where the defendant can show an error rising to the level of actual prejudice or that the structural protections of the grand jury were so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice without any particular assessment of prejudicial impact." Id. (quoting Bank of Nova Scotia v. United States, 487 U.S. 250, 257 (1988) (internal quotations omitted)).

Here, the testimony of the three witnesses who admitted that they had used several bags of heroin in the hours prior to their grand jury appearance compromised the structural integrity of the grand jury process. Although the government disclosed the fact that the witnesses had

consumed heroin to the grand jury and the government certainly did <u>not</u> in any way attempt to mislead the grand jury, the government's decision to use drug induced witnesses has created a fatal defect in the process itself. A witness who has used heroin a few hours prior to his or her testimony is inherently unreliable. Moreover, the grand jury, which can assess a witness' credibility, heard no testimony about how long the effects of heroin last, the effects of heroin on the ability to recall details with accuracy, and heroin's effects on basic cognitive functions such as comprehension. The inherent unreliability of the proceedings is a structural fissure so prejudicial that it compromises the process and renders the proceedings themselves fundamentally unfair. Hence, the government has violated the defendant's constitutional rights. The court can cure this violation by ordering a dismissal of the indictment without prejudice.

## **CONCLUSION**

For the foregoing reasons, the court must order the dismissal of the indictment.

Dated: April 10 2006

Respectfully submitted,
MICHAEL VACCARO
By his attorneys,

/s/ Gary G. Pelletier
_____
R. Bradford Bailey, BBO#549749
Gary G. Pelletier, BBO#631732
DENNER ASSOCIATES, P.C.
Four Longfellow Place, 35th Floor
Boston, MA 02114
(617) 227-2800