UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.    ) | No. 05-CR-10135-NMG |
| ) | |
| MICHAEL VACCARO ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

Michael Vaccaro ("the defendant") submits this memorandum of law in support of his motion to suppress statements in this case. The defendant contends that government agents violated his rights under the Fifth and Sixth Amendments to the United States Constitution when they initiated questioning of the defendant after his attorney had instructed them not to speak with his client. The agent's disregard of the attorney/client relationship constitutes egregious police misconduct in violation of the due process clause of the Fifth Amendment and the right to counsel enshrined in the Sixth Amendment. Consistent with the principles of the exclusionary rule, the court must remedy this violation by ordering the suppression of the illegally obtained statements.

**FACTS AND BACKGROUND**

On October 1, 2004, an explosion occurred in a residence on 47 Chapel Street in Lowell, Massachusetts. State and federal investigators determined that the explosion resulted from arson. After questioning several heroin addicted residents of the charred building, investigators

suspected that the defendant was the arsonist. The government theorized that the defendant visited 47 Chapel Street to utilize the services of prostitute named Anissa Willette ("Willette"). The government alleges that when Willette deprived the defendant of sixty ($60.00) dollars worth of her services, he retaliated by burning her home. The defendant, a prominent local businessman with no criminal convictions, vehemently denies the allegation.

After speaking with Willette and other supposed witnesses as part of its investigation, the Lowell Police Department contacted the defendant on October 25, 2004, and asked him if he wished to make a statement about prostitution in Lowell. The defendant refused, indicating that he believed the police had an ulterior motive and instructed the police to contact his lawyer. Later that day, the defendant's attorney contacted the Lowell Police Department and instructed them not to have any further contact with his client relating to the arson investigation.

Agents of the United States Bureau of Alcohol, Tobacco, and Firearms ("ATF") worked jointly with the Lowell Police Department to investigate the apparent arson at 47 Church Street. Despite the explicit instructions provided by the defendant's attorney to law enforcement, ATF agents appeared at the defendant's home on January 6, 2005. After signing a waiver of his constitutional rights, the defendant spoke with the agents and told them that he drives a black Dodge Truck and occasionally drives to Tower News in Lowell to purchase an automobile magazine known as Hemming's Motor News. When the agents asked his wife when she last purchased Martinson's brand instant coffee, the defendant allegedly told her in a loud voice not to answer the question. (ATF Report at 4).

Witnesses earlier had provided a description of a dark Dodge truck in the vicinity of the 47 Chapel Street property near the time of the fire. In addition, arson investigators had discovered that the fire started through the use of an incendiary mechanism in a Martinson's

brand instant coffee container. The government presented the defendant's statements and the live testimony of four witnesses, who supposedly saw the defendant in or near the 47 Chapel Street property shortly about a half an hour before the incident, to a grand jury. The grand jury returned an indictment charging the defendant with a violation of the federal arson statute. See 18 U.S.C. § 844.

## ARGUMENT

The right to assistance of counsel contained within the Sixth Amendment to the United States Constitution operates as an inviolate and stalwart principle essential for the protection of fundamental fairness and integrity in the criminal justice process. Gideon v. Wainwright, 372 U.S. 335 (1963); Johnson v. Zerbst, 304 U.S. 458, 462-463 (1938). "The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a medium between him and the State… [T]his guarantee includes the State's affirmative obligation not to act in a manner that circumvents the protections accorded the accused by invoking this right." Maine v. Moulton, 474 U.S. 159, 176 (1985) (emphasis added).

Here, the defendant unquestionably asserted his right to counsel several months prior to the agents' questioning when he told the Lowell Police officer investigating the same crime in cooperation with the ATF that he was represented by counsel. Moreover, the defendant's attorney contacted the police and specifically instructed them not to question his client further regarding the arson investigation. The ATF agents ignored the defendant's attorney's directive and circumvented the defendant's assertion of his right to counsel.[1]

Although the government may contend that the Sixth Amendment right to counsel has not yet attached due the fact that the government had not yet initiated formal charges, this fact

---

[1] The defendant does **not** assert that any person affiliated with the United States Attorney's Office directed or participated in the ATF agent's decision to contact the represented defendant.

does not permit agents to make an end run around the attorney/client relationship. Although the Moulton Court upheld the principle that the right to counsel certainly attaches after the initiation of formal proceedings, it left open the question of whether the Sixth Amendment protections might apply in certain instances before law enforcement initiates formal charges against a suspect. Id. The instant case presents the paradigmatic situation envisioned by the Moulton Court when it left the question open.

The Moulton Court clearly condemned law enforcement efforts to try to circumvent a client's decision to seek the protection of his attorney. Id. In this case, the ATF agents flagrantly and brazenly circumvented the attorney/client relationship. The defendant specifically told the Lowell Police to speak with his attorney. The defendant's attorney unambiguously told the Lowell Police not to speak with his client under any circumstances. The ATF agents wantonly ignored the attorney's instructions. Despite the absence of formal charges, the instant situation is exactly the type of police misconduct that the Moulton Court sought to deter with the exclusionary rule. See United States v. Stewart, 337 F.3d 103, 106 (1st Cir. 2003) (exclusionary rule designed to deter police misconduct).

Deliberately ignoring an attorney's instruction not to speak with his client is an extreme example of police misconduct. Concerned with protecting the attorney/client relationship rather than formulating a bright-line immutable test as to when the Sixth Amendment right attaches in all cases, the Moulton Court certainly would have found the Sixth Amendment right cognizable in a case such as this where both the attorney and client asked the police not to contact the defendant about this investigation. Ignoring the attorney's and defendant's instructions imperils the critical importance of the attorney/client relationship in the context of an adversarial criminal justice system.

Moreover, unlike the First Circuit's recent decision in <u>United States v. Coker</u>, 433 F.3d 39 (1st Cir. 2005), where a divided panel upheld an ATF agent's[2] decision to approach a defendant in a federal arson investigation after the initiation of charges in state court involving a parallel arson investigation. Although the defendant in <u>Coker</u> had obtained representation in an arson charge involving the same dwelling, the panel majority found no Sixth Amendment violation due to the fact that "there was no evidence that the two sovereigns (United States and Massachusetts) consistently worked together in investigations." <u>Id.</u> at 47. Here, the opposite facts exist. ATF specifically acknowledges in its investigative paperwork that the investigation into the 47 Chapel Street arson was a joint effort involving both the Lowell Police Department and the ATF. Hence, <u>Coker</u> is inapposite.

<u>Moulton's</u> fact specific approach to the Sixth Amendment protection is apposite here. Keeping the Sixth Amendment right to counsel inviolate requires invoking the exclusionary rule to deter law enforcement attempts to abrogate an axiomatic right in place since the Founding Fathers framed our nation's Constitution. Preservation of this important right, therefore, requires suppression of the unlawfully acquired statements.

---

[2] Agent Konstantinos Balos, who approached the defendant in <u>Corker</u> after he obtained representation in the Massachusetts case involving the burning of the same dwelling, is the same agent who approached the defendant after he and his attorney specifically instructed law enforcement not to contact the defendant.

## **CONCLUSION**

      For the foregoing reasons, the court must order the suppression of the illegally obtained statements.

Dated:  April 10 2006

Respectfully submitted,
MICHAEL VACCARO
By his attorneys,

/s/ Gary G. Pelletier
_____
R. Bradford Bailey, BBO#549749
Gary G. Pelletier, BBO#631732
DENNER ASSOCIATES, P.C.
Four Longfellow Place, 35th Floor
Boston, MA  02114
(617) 227-2800