```
                   UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA     )
                             )
          v.                 )
                             )    CR. NO. 05-10135-NMG
MICHAEL VACCARO              )
                             )
```

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

**Introduction**

The United States of America, by and through its attorneys, United States Attorney Michael J. Sullivan and Assistant United States Attorney Donald L. Cabell, hereby opposes the defendant's motion to suppress statements he made when agents went to his home to interview his wife. The defendant alleges that the officers' conduct violated the defendant's 5th and 6th Amendment rights but the protections provided by those Amendments are not implicated here where the defendant was not in custody and where the statements were made prior to the initiation of any criminal proceedings.[1]

**Relevant Facts**

On October 1, 2004, an explosion occurred on the first floor of a residence at 47 Chapel Street in Lowell, MA. Various

---

[1] Although the defendant frames his motion as alleging a violation of both the Fifth and Sixth Amendments, he does not actually argue the Fifth Amendment prong of the claim, focusing exclusively on the Sixth Amendment issue. Under these circumstances, the government does not address the issue here but respectfully requests the right to supplement its opposition to address the Fifth Amendment issue should the Court deem it appropriate.

federal, state and local law enforcement officers subsequently began an arson investigation.

On October 25, 2004, officers sought to interview the defendant. The defendant declined, however, and, by telephone, instructed the officers to contact his attorney instead. The defendant gave the officers the attorney's name and telephone number but the officers did not thereafter contact the attorney or seek to further speak with the defendant.

On January 6, 2005, officers decided to speak to the defendant's wife, Sheryl Vaccaro (Ms. Vaccaro); among other things, a truck observed on the night of the arson/explosion was registered to Ms. Vaccaro. Lowell Police Detective Brian Keefe and ATF Special Agent Konstantionos Balos (the officers) went to Ms. Vaccaro's home on that day. The defendant answered the door. The officers asked him whether his wife was at home and he answered affirmatively and brought her to the window. The officers asked Ms. Vaccaro if she would answer questions regarding the truck and she agreed to do so. Ms. Vaccaro then invited the officers into her home. The defendant chose to remain next to her during the interview. After providing some information regarding the truck at issue, the defendant intervened and told the officers that he rather than his wife would answer any additional questions. The defendant instructed Ms. Vaccaro to go upstairs and she did so.

The officers, mindful that the defendant had previously stated that officers could not speak to him directly, reminded him of that fact, and suggested that he might wish to contact his attorney or postpone any interview with the officers. The defendant stated that he still was willing to speak to the officers, but stated that he wished to do so in the garage rather than the house. Out of an abundance of caution, but particularly because the defendant had previously stated that he had a lawyer, the officers advised the defendant of his <u>Miranda</u> rights, including the fact that he was not under arrest and was free to tell the officers to leave at any time. The defendant stated that he understood his rights but he did not wish to sign a written acknowledgment.

The defendant then proceeded to make a number statements regarding the truck, and his actions around the time of the arson. At the conclusion of the interview, the officers asked to speak to Ms. Vaccaro once again. When they asked her a particular question regarding a particular brand of coffee --a brand which had special relevance to the arson investigation, the defendant loudly instructed her not to answer the question. The officers ended the interview at this point and left the premises.

On May 5, 2005, the criminal case against the defendant was initiated by way of complaint.

### **Analysis**

The officers did not violate any of the defendant's Sixth Amendment protectible interests because that provision is not applicable where the statements preceded the initiation of any criminal charges. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Literally, these prerequisites are not met here, as there was neither a "prosecution" nor was the defendant an "accused" at the time officers went to speak to his wife on January 25, 2005.

As the defendant concedes, the right-to-counsel cases generally involve incidents that occurred after the initiation of adversary criminal proceedings and that arose during a critical, post-indictment proceeding. As the Supreme Court has stated, "our cases have long recognized that the right to counsel attaches only at or after the initiation of adversary judicial proceedings against the defendant." United States v. Gouveia, 467 U.S. 180, 187 (1984). Indeed, the Gouveia Court noted that "... while members of the Court have differed as to the existence of the right to counsel in [other cases], all of those cases have involved points of time at or after the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."

Id. at 187-88.  The Supreme Court's conclusion that the right to counsel attaches only at the initiation of adversary judicial criminal proceedings "is far from a mere formalism."  Rather, it is only at that time "that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified.  It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law."  Id.

    Notably, the Supreme Court has previously rejected the argument that the 6th Amendment applies where officers investigating a crime interviewed the defendant, who had counsel, prior to the initiation of adversary or criminal proceedings.  In Moran v. Burbine, 475 U.S. 412 (1986), the defendant sought to exclude inculpatory statements made to the police after his family had retained an attorney but before formal charges had been brought.  The Supreme Court held that there was no violation because "the possibility that the encounter may have important consequences at trial, standing alone, is insufficient to trigger the Sixth Amendment right to counsel." Id., 475 U.S. at 432.  The Court went on to explain that "the suggestion that the existence of an attorney-client relationship itself triggers the protections of the Sixth Amendment misconceives the underlying purposes of the right to counsel," which is not to protect the

attorney-client relationship or the suspect from the "consequences of his own candor," but, rather, to assure that a suspect or defendant "shall not be left to his own devices in facing the "'prosecutorial forces of organized society.' " Id.

Similarly, the Sixth Circuit rejected a similar argument in United States v. Moody, 206 F.3d 609 (6th Cir. 2000), cert. denied, 531 U.S. 925 (2000). There, the government conducted pre-indictment interviews with Moody, without the assistance of counsel, and government attorneys offered him a deal. The court, albeit reluctantly, held that Moody's Sixth Amendment rights did not attach even though by offering a specific plea bargain the U.S. Attorney's Office was committing itself to proceed with prosecution. As it explained, the government had not instituted formal adversary proceedings against Moody and "[t]he Supreme Court's holding that the Sixth Amendment right attaches only 'at or after the initiation of judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment,' is a bright line test; it is a mandate that 'the Sixth Amendment right to counsel does not attach until after the initiation of formal charges.' " Id. at 614.

Other Circuits, including the First, are in accord. See Roberts v. Maine, 48 F.3d 1287, 1290-91 (1st Cir. 1995) (Sixth Amendment right to counsel not applicable to a blood/alcohol test

because formal charges had not yet been brought for drunk driving); Judd v. Vose, 813 F.2d 494, 496-97 (1st Cir. 1987) (questions by government agent after arrest and extradition hearing but before being formally charged did not violate Sixth Amendment right to counsel); United States v. Mapp, 170 F.3d 328, 334 (2d Cir. 1999) (Sixth Amendment right to counsel did not attach when government placed a cooperating witness in suspect's holding cell after state charges had been filed but six months before federal prosecution was commenced); United States v. Ingle, 157 F.3d 1147, 1151 (8th Cir. 1998) (statement made by Ingle to informant admissible even though he was represented by a court-appointed attorney because formal charges had not been initiated); United States v. Lin Lyn Trading, Ltd., 149 F.3d 1112, 1117 (10th Cir. 1998) (notepad seized by customs agents before defendants were indicted not protected by Sixth Amendment right to counsel); Kight v. Singletary, 50 F.3d 1539, 1548 (11th Cir. 1995) (statements to police about a murder while Kight was in custody and charged with a robbery admissible because the Sixth Amendment right to counsel is "offense specific" and prosecution had not begun against him with respect to the murder); United States v. Williams, 993 F.2d 451, 456 (5th Cir. 1993) (defendant's testimony before federal grand jury after being charged in state drug case did not violate her Sixth Amendment right to counsel in connection with federal perjury

prosecution which had not been initiated at the time); United States v. Heinz, 983 F.2d 609, 612 (5th Cir. 1993) (taped telephone conversations with targets represented by counsel did not violate Sixth Amendment right to counsel before indictment); United States v. Larkin, 978 F.2d 964, 969 (7th Cir. 1992) (Sixth Amendment right to counsel did not attach at pre-indictment custodial lineup although counsel should have been provided anyway); United States v. Payne, 954 F.2d 199, 203 (4th Cir. 1992) (Sixth Amendment right to counsel invoked for tax offenses does not extend to drug and weapons offenses on which Payne had not been indicted so as to protect statements made to government agent); United States v. Sutton, 801 F.2d 1346, 1365 (D.C. Cir. 1986) (taping that occurred during investigatory stage after suspect had counsel but before initiation of any judicial proceedings did not trigger Sixth Amendment right to counsel as he was not an "accused"); United States v. Reynolds, 762 F.2d 489, 493 (6th Cir. 1985) (statements after warrant had been obtained not protected by the Sixth Amendment right to counsel as no judicial proceedings had taken place).

To be clear, the principal case relied on by the defendant, Maine v. Moulton 474 U.S. 159 (1985), is not inapposite.  In Maine, the Supreme Court considered the constitutional implications of an investigation that yielded evidence pertaining to two crimes, one for which the suspect had been indicted and

one for which he had not.  The Supreme Court reaffirmed that after the first charging proceeding the government may not deliberately elicit incriminating statements from an accused out of the presence of counsel.  The Supreme Court made clear, however, that the evidence concerning the crime for which the suspect had not been indicted-- evidence obtained in precisely the same manner from the identical suspect-- would be admissible at a trial limited to those charges.  Maine, 474 U.S. at 488-490.  The clear implication of the holding, and one that confirms the teaching of Gouveia, is that the Sixth Amendment right to counsel does not attach until after the initiation of formal charges.  Moran v. Burbine, 475 U.S. at 430-31; see also McNeil v. Wisconsin, 501 U.S. 171 (1991)(no 6th Amendment violation where statements provided to the police after suspects Sixth Amendment right to counsel had attached on one offense were to be used with respect to other offenses); Illinois v. Perkins, 496 U.S. 292 (1990) (noting that "[i]n the instant case no charges had been filed on the subject of the interrogation, and our Sixth Amendment precedents are not applicable").

   Here, there is no dispute that no formal charge, preliminary hearing, indictment, information, or arraignment had occurred when the officers spoke with the defendant and his wife at their home in January of 2005.  Accordingly, the defendant's Sixth Amendment rights were not at issue and no violation occurred.

**Conclusion**

For the reasons stated above, the defendant's motion to suppress statements should be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:

/s/Donald L. Cabell
DONALD L. CABELL
Assistant U.S. Attorney
