United States District Court
District of Massachusetts

```
                                  )
UNITED STATES OF AMERICA,         )
                                  )
          v.                      )
                                  )   Criminal No.
MICHAEL VACCARO,                  )   05-10135-NMG
                                  )
          Defendant.              )
                                  )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

On June 1, 2005, the government brought an indictment against the defendant, Michael Vaccaro ("Vaccaro"), which charged him with arson and possession of an unregistered firearm. Defendant moves to dismiss the indictment and suppress various pieces of evidence from the investigation.

## I.    Background

As background, on Friday, October 1, 2004, at approximately 10:37 p.m., an explosion occurred at 47-49 Chapel Street, Lowell, Massachusetts ("the Building"). The Building is located in a residential neighborhood and is a two-story apartment building containing four rental units. The right-side entry door is identified as 47 Chapel Street and the left-side entry door is identified as 49 Chapel Street.

The Lowell Fire Department responded to the scene and found

-1-

an extinguished fire with a strong odor of gasoline and visible
fire damage to the entryway.  Fire investigators found a burned
newspaper in the front yard of the building as well as small
glass fragments, paper and red plastic littered across the
sidewalk and street.  Samples of glass, burned paper, gasoline
and paper were collected from the scene and submitted to the
State Police Crime Laboratory which confirmed the presence of
gasoline and pyrotechnic powder in the samples.  Fire
investigators concluded the cause of the explosion was a hand-
delivered, improvised explosive device consisting of a glass jar,
gasoline and an explosive initiating device placed on the hinge
side of the front door to 47 Chapel Street.  The ATF has
determined that the device recovered from the building
constitutes a destructive device under the U.S. Code.

Through interviews with residents of 47 Chapel Street,
investigators learned that a female resident of that apartment,
Anissa Willette ("Willette"), had a disagreement with a male
visitor earlier in the evening on October 1, 2004.  Willette was
engaged in prostitution and allegedly met Vaccaro earlier that
day when he propositioned her for oral sex while he was operating
his pick-up truck in an area of Lowell where she was working.
Willette allegedly entered his truck and they both drove to 47
Chapel Street.

When Vaccaro allegedly arrived at the residence with

-2-

Willette, they were admitted by Thomas Mascaro. Mascaro is a friend of Willette and he lives at 47 Chapel Street with Willette and his son, Mark, who was also home at the time. At some point during the tryst, there was an argument about price and Vaccaro allegedly got very aggressive with Willette. She left the apartment and, shortly thereafter, the man alleged to be Vaccaro was escorted from the apartment by Mark Mascaro. He claims that Vaccaro told him that Willette had ripped him off but that he remembered the address and would be back. The man then walked toward a black pick-up truck.

A few hours later, Thomas Mascaro heard an explosion in his apartment and saw flames coming from the hallway near the front entry door. He was able to extinguish the flames with several buckets of water. One eyewitness claims that just before the explosion he saw a man fitting Vaccaro's physical description carrying a container which the man placed on the hinge side of the front door of 47 Chapel Street before walking back to a black pick-up truck.

Investigators soon began to focus their attention on Vaccaro as a suspect. On October 14, 2004, and October 22, 2004, investigators interviewed four different witnesses and showed them an array of eight photographs, which included a photo of Vaccaro. All four witnesses (Willette, Thomas and Mark Mascaro and Antonio DeFreitas) positively identified Vaccaro's photo as

-3-

the man who entered the apartment with Willette on October 1,
2004.

As the investigation continued in October, 2004, Vaccaro
told one of the investigators, Brian Keefe ("Keefe"), a patrolman
with the Lowell Police Department, that he would not speak to him
or any other investigator without his lawyer present.
Notwithstanding that warning, several weeks later Keefe and his
partner in the investigation, ATF Agent Konstantinos Balos
("Balos"), went to Vaccaro's home, purportedly to speak with
defendant's wife, not to Vaccaro.  Defendant refused to let his
wife speak to the investigators alone but then sent her upstairs
and told the officers that he would answer their questions.

At that point, Keefe and Balos reminded Vaccaro of his prior
instruction regarding counsel but Vaccaro told them he was
willing to speak to them in his garage.  The investigators gave
Vaccaro a Miranda warning and he responded that, although he
understood his rights, he would not sign a written acknowledgment
of waiver.  Vaccaro then proceeded to speak with the officers and
addressed their questions.  Keefe noted on the Miranda waiver
form "verbal waiver, refused to sign".  According to the
investigators, Vaccaro made various statements regarding his
truck and his actions around the time of the arson.  Vaccaro's
wife then reappeared and the agents attempted to ask her a
question but defendant loudly ordered her not to answer and the

-4-

investigators suspended the interview and left the premises.

## II.  **Pending Motions**

Defendant now moves 1) to dismiss the indictment, 2) to suppress identification evidence and 3) to suppress statements he made to the police in the course of the investigation.  The government opposes those motions.  Having considered the memoranda in support of and opposition to the pending motions and after conducting an evidentiary hearing with respect to those motions, the Court resolves them as follows.

### A.  **Motion to Dismiss Indictment**

Vaccaro moves to dismiss the indictment because the government called witnesses before the grand jury who had ingested heroin a few hours prior to their testimony.  Vaccaro claims those actions fatally prejudiced the indictment process and violated fundamental fairness.  During questioning before the grand jury, the three witnesses (Willette, Thomas Mascaro and Mark Mascaro) admitted to ingesting heroin on the morning of their scheduled testimony but also testified that such drug use 1) took place several hours before their appearances, 2) did not interfere with their recollections as to events concerning the investigation and 3) did not cause them to be high at the time of their testimony.

The government contends that the witnesses were honest with

-5-

the grand jurors in admitting to their heroin use and that their
testimony was reliable and competent. Moreover, even after the
grand jurors became aware of the witnesses' heroin use, they
proceeded to indict Vaccaro on the strength of the evidence
presented to them.

The Supreme Court has held that an indictment returned by a
legally constituted and unbiased grand jury "is not subject to
challenge on the ground that the grand jury acted on the basis of
inadequate or incompetent evidence." United States v. Calandra,
414 U.S. 338, 345 (1974); United States v. Latorre, 922 F.2d 1, 7
(1st Cir. 1990). The government's position is further bolstered
by the fact that there is not a single legal precedent supporting
the dismissal of an indictment under similar circumstances.  The
witnesses' drug use is fair game for cross examination at trial
but it does not justify the extraordinary remedy of dismissing
the indictment that is now proposed by defendant.  Thus,
defendant's motion will be denied.

**B.   Motion to Suppress Identification Evidence**

Vaccaro claims that the photo array identifications by the
four witnesses should be excluded because the array was unduly
suggestive and the government took no precautions to ensure that
the witnesses did not discuss it with one another.  The
government responds that the array was not unduly suggestive and
was reliable.

-6-

The Court is mindful that it is only in extraordinary cases that identification evidence should be withheld from the jury. United States v. de Jesus-Rios, 990 F.2d 672, 677 (1st Cir. 1993)(citations and quotation marks omitted). Such an extraordinary case would exist if "there was a very substantial likelihood of irreparable misidentification." Id. (citation omitted). The First Circuit Court of Appeals has held that when a defendant seeks to suppress identification evidence, the courts must employ a two-pronged analysis. United States v. Henderson, 320 F.3d 92, 100 (1st Cir. 2003). The first prong requires the reviewing court to determine if the identification procedure employed was impermissibly suggestive. Id. If, and only if, the court so finds, then it must address whether "the identification itself was reliable under the totality of the circumstances, notwithstanding the suggestive procedure." Id. (citation omitted).

Here, officers conducting the investigation took the necessary steps to ensure the absence of suggestiveness in the photo array at issue. The officers' photo array included eight photos, one of the defendant and seven other photos of men who share the same physical characteristics of the defendant (e.g., race, age, hair color and facial hair (mustache)). The photos were arranged four on top and four on the bottom. No picture was emphasized more than the others and several photos were cropped

for purposes of creating uniformity in photo size. All photos were presented in black-and-white. The officers conducted the identification procedure with each witness separately. They read detailed instructions to each witness prior to showing them the array. Those instructions noted that 1) the suspect's photo was not necessarily included in the array and 2) the witness was not required, nor should feel an obligation, to choose any of the photos in the array.

Based on those procedures, the officers avoided creating an impermissibly suggestive array. Certainly, they could have avoided any claim of suggestiveness by simply re-arranging the order and positions of the eight photos within the array after each interview, especially given the fact that the investigating officers knew that the prospective witnesses were acquainted with (and/or related to) one another. Nevertheless, the officers' photo array met the constitutional requirement and was not unduly suggestive. The Court, therefore, need not reach the issue of the reliability of the identifications and that evidence will not be suppressed.

## C.  Motion to Suppress Statements

Vaccaro moves to suppress the statements he made to law enforcement officers at his home on January 6, 2005, pursuant to the Fifth and Sixth Amendments because, he alleges, the government obtained them in flagrant disregard of his right to

-8-

counsel. Although Vaccaro's motion is premised on the Fifth and Sixth Amendments, his supporting memorandum is focused exclusively on the Sixth Amendment issue, therefore, it will be the Court's primary focus.

The Sixth Amendment becomes applicable only when the government's role shifts from investigation to accusation. Roberts v. Maine, 48 F.3d 1287, 1290 (1st Cir. 1995)(citations and quotation marks omitted). The Supreme Court and the First Circuit Court of Appeals have made it clear that the right to counsel attaches only at or after the initiation of adversary judicial proceedings against the defendant. See United States v. Gouveia, 467 U.S. 180, 187 (1984); Roberts, 48 F.3d at 1290; Judd v. Vose, 813 F.2d 494, 496-97 (1st Cir. 1987). The initiation of such proceedings is normally by way of a formal charge, preliminary hearing, indictment, information or arraignment, Roberts, 48 F.3d at 1290, none of which had occurred when the officers spoke with Vaccaro and his wife at their home on January 6, 2005.

Defendant contends that the Supreme Court in Maine v. Moulton, 474 U.S. 159 (1985), left open the door for the right to counsel to attach before the initiation of formal charges. The First Circuit has also recognized such a scenario where the government crosses the constitutionally significant divide from fact-finder to adversary. Roberts, 48 F.3d at 1291 (citation

-9-

omitted).  Nevertheless, such circumstances "must be extremely limited", such as when the government intentionally delays formal charges for the purpose of holding a lineup outside the presence of counsel.  Id.  Such a scenario is a far cry from the facts presented by the instant case where the visiting officers remained ensconced in their role as investigators, not accusers.

Even if this Court were to analyze the suppression motion under the rubric of the Fifth Amendment, defendant's position would fare no better.  First, the police are compelled to give a Miranda warning only when a reasonable person would believe he is "in custody" under the circumstances.  United States v. Ventura, 85 F.3d 708, 711 (1st Cir. 1996).  See also United States v. Nishnianidze, 342 F.3d 6, 13 (1st Cir. 2003)(delineating the factors for consideration of whether a defendant is "in custody").  Here, despite the fact that the investigatory officers, Keefe and Balos, read Vaccaro the Miranda warning as a precaution, it is highly unlikely they were required to do so under the circumstances because, applying the relevant factors, he was not "in custody".  Second, even if Vaccaro was "in custody", the evidence indicates that he waived his rights to silence and assistance of counsel despite his refusal to sign the waiver form.  See United States v. Speaks, 453 F.2d 966, 968-69 (1st Cir. 1971)(finding defendant's waiver of his rights to remain silent and to counsel was intelligently made, even though

-10-

he refused to sign the waiver form, where he stated that he
understood his rights and wanted to speak with the investigating
officer).  Thus, Vaccaro's statements will not be suppressed.

## ORDER

In accordance with the foregoing, Defendant's Motions to
Dismiss the Indictment (Docket No. 29), to Suppress
Identification Evidence (Docket No. 27) and to Suppress
Statements (Docket No. 31) are **DENIED**.

**So ordered.**

*Nathaniel M. Gorton*

Nathaniel M. Gorton
United States District Judge

Dated July *13* , 2006

-11-